UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 23-CR-421 (JMC) |
| : | |
| SIAKA T. MASSAQUOI, : | |
| : | |
| Defendant. : | |

### UNITED STATES' OBJECTIONS TO DEFENSE WITNESSES

The United States of America respectfully submits objections to the defendant's proposed witnesses. Defendant Massaquoi has provided the government with a witness list indicating that he may call "all, some, or none" of the 14 people listed. The defense represented, at the January 10, 2025, status conference that they would not call President Joseph Biden, U.S. Attorney General Merrick Garland, or former U.S. Attorney Matthew Graves. The government's objections for the remaining witnesses, and bases for its objections, are outlined below. The government objects, pursuant to Federal Rules of Evidence 401 and 403, to these witnesses because their testimony would be irrelevant or because their testimony creates the danger of confusing the issues and misleading the jury.

### OBJECTIONS

I.  **Jacob Chansley**

Jacob Chansley is a convicted January 6 defendant who pleaded guilty in September 2021. *See United States v. Jacob Chansley*, 21-cr-30 (RCL), ECF No. 70. Chansley's testimony would not be relevant because there is no indication Chansley and Massaquoi were in close proximity outside and were certainly not in proximity to each other inside the Capitol. Chansley reached the Upper West Terrace at approximately 2:10 p.m. and entered the Capitol building, via the

Senate Wing Door, at 2:14 p.m. After entering, Chansley went to the second floor Senate side before entering the Senate floor at 2:25 p.m. Police cleared Chansley from the Senate Chamber at approximately 3:10 p.m., leaving in the direction of the Northeast Plaza. Massaquoi entered the building at approximately 3:38 p.m., via the Senate Wing Door on the opposite side of the building, and exited through the same door at around 3:40 p.m. Unless defendant can establish a connection between Chansley's observations and his own, Chansley's testimony should be precluded. If some relevant connection is established, via an additional proffer to the Court, Chansley's testimony should be limited to preclude any speculation or opinion about defendant's state of mind.

## II.    Ray Epps

Ray Epps is a convicted January 6 defendant who pleaded guilty in September 2023. *See United States v. Ray Epps*, 23-cr-321 (JEB), ECF No. 4. Epps attended the "Stop the Steal" rally on the Ellipse and directed a group of rallygoers to go to the Capitol after then-President Trump was done speaking. At approximately 12:52 p.m., Epps and the vanguard of rioters reached the Peace Circle, where they encountered bike rack barriers that rioters breached shortly thereafter. Epps entered the restricted area of the Capitol grounds and did not enter the building. The government is unaware of any interaction between defendant and Epps, and there is no indication that his observations would shed light on defendant's conduct or state of mind. The government notes, however, that Epps has been the target of a prominent conspiracy theory.[1] Defendant should not be allowed to call this witness and promulgate such theories or distract the jury from the facts.

---

[1] Zach Montague & Alan Feuer, *Ray Epps, Target of Jan. 6 Conspiracy Theory, Is Sentenced to Probation*, N.Y. Times, Jan. 9, 2024, https://www.nytimes.com/2024/01/09/us/politics/ray-epps-sentenced-january-6.html.

### III.  Daniel Goodwyn

Daniel Goodwyn is a convicted January 6 defendant who pleaded guilty in January 2021. *See United States v. Daniel Goodwyn*, 21-cr-153 (RCL), ECF No. 82. Between around 2:00 p.m. and 4:00 p.m., Goodwyn was part of the crowd that had gathered at the northern Lower West Terrace within the Capitol's restricted grounds. Goodwyn entered the Capitol building through the Senate Wing Door at around 3:32 p.m., was told to leave by police, and exited through the same door at 3:33 p.m., around 36 seconds after he entered. Massaquoi entered the building at approximately 3:38 p.m., via the Senate Wing Door, and exited through the same door at around 3:40 p.m. Unless defendant can establish a connection between Goodwyn's observations and his own, Goodwyn's testimony should be precluded. If some relevant connection is established, via an additional proffer to the Court, Goodwyn's testimony should be limited to preclude any speculation or opinion about defendant's state of mind.

### IV.  Samuel Montoya

Samuel Montoya is a convicted January 6 defendant who pleaded guilty in November 2022. *See United States v. Samuel Montoya*, 21-cr-336 (JDB), ECF No. 55. Montoya entered the Capitol building through the Senate Wing Door at approximately 2:18 p.m. and walked through different areas of the Capitol before exiting through the East Front Door at approximately 2:56 p.m. Massaquoi entered the building at approximately 3:38 p.m. via the Senate Wing Door and there is no apparent connection between Montoya and Massaquoi other than the fact that they formed part of the mob of people who overwhelmed police on January 6. If some relevant connection is established, via an additional proffer to the Court, Montoya's testimony should be limited to preclude any speculation or opinion about defendant's state of mind.

### V.  Anthime "Baked Alaska" Gionet

Anthime Gionet is a convicted January 6 defendant who pleaded guilty in July 2022. *See United States v. Anthime Gionet*, 22-cr-132 (EGS), ECF No. 63. Gionet entered the U.S. Capitol building at around 2:00 p.m. and eventually reached the Senate Wing Door where police officers were expelling rioters. Gionet was already inside near the Senate Wing Door when Massaquoi entered the building. At trial, the government will seek to admit into evidence the relevant portion of the livestream footage that Gionet recorded, that is, footage of Massaquoi when he was in the building. Unless defendant can establish a connection between Gionet's observations and his own, Gionet's testimony should be precluded. If some relevant connection is established, via an additional proffer to the Court, Gionet's testimony should be limited to preclude any speculation or opinion about defendant's state of mind.

### VI.  Treniss J. Evans III

Treniss Evans is a convicted January 6 defendant who pleaded guilty in March 2023. *See United States v. Treniss J. Evans, III*, 21-cr-225 (DLF), ECF No. 32. At approximately 3:00 p.m., Evans entered the U.S. Capitol building through a broken window by the Senate Wing Door and marched through the building, addressing rioters with a megaphone. At approximately 3:11 p.m., Evans addressed the rioters in the Crypt. Massaquoi entered the building at approximately 3:38 p.m. via the Senate Wing Door and there is no apparent connection between Evans and Massaquoi other than the fact that they entered the building at nearly the same place. Unless defendant can establish a connection between Evans's observations and his own, Evans's testimony should be precluded.

The government is also concerned that defendant may use this witness as a back-door attempt at an expert opinion, which is improper. The government has not received expert notice

or an expert-witness disclosure for Evans. The government will object strenuously to any testimony from Evans that invades the space of an expert, and this will waste additional time and resources. In addition, given Evans's online presence and involvement in the post-January 6 activist community, his reverse-Jencks will be extensive, and the government is concerned defendant will not meet its obligations to provide all relevant statements to the government before his cross-examination begins.

**VII.    David Sumrall**

David Sumrall is not a relevant witness as he has no apparent connection to Massaquoi or his criminal actions on January 6, 2021. Sumrall has become a media personality as a January 6 "truther" who holds himself out to be a "[l]ead J6 expert, J6 investigator licensed through DOJ, with access to all government videos, J6 attendee and court witness for defendants."[2] His testimony would be problematic for three reasons. There is no current indication Sumrall and Massaquoi were in the same areas on January 6, which minimizes the relevance of Sumrall's testimony. Like any other witness, Sumrall cannot provide speculative or opinion evidence of a defendant's state of mind. Finally, any "expert" testimony regarding January 6 is impermissible under Rule 702 of the Federal Rules of Evidence. The government has not received expert notice or an expert-witness disclosure for Sumrall.

The government notes for the Court that Sumrall was a fact witness in *United States v. Christopher Alberts*, 21-cr-26 (CRC) and *United States v. Lesperance, et al.*, 21-cr-575 (JDB). His testimony in those cases indicates he was not near Massaquoi when the defendant entered the building. If some relevant factual connection is established, via an additional proffer to the Court,

---

[2] Sumrall's biography is available at the website he runs: https://stophate.com/bio.

Sumrall's testimony should be limited to preclude any speculation or opinion testimony about defendant's state of mind.

### VIII.    Sergeant Daniel Thau (MPD)

Sergeant Daniel Thau is a member of the Metropolitan Police Department who responded to the U.S. Capitol when it was attacked on January 6, 2021. Sgt. Thau was present outside the Capitol building at the Upper West Terrace, starting at around 2:44 p.m. During the time that Massaquoi was inside the building, Sgt. Thau was around a corner and beyond line-of-sight, and not near the Senate Wing Door or the courtyard outside the door. At around the time that defendant left the building, Sgt. Thau was responding to a police line that was being assaulted by rioters. The government is unaware of any interaction between defendant and Sgt. Thau, and there is no indication that Sgt. Thau's observations would shed light on defendant's conduct or state of mind. The sergeant's testimony would also be irrelevant under defendant's legally deficient entrapment-by-estoppel defense. Furthermore, Sgt. Thau's testimony about what he observed on the Upper West Terrace would waste the jury's time and needlessly duplicate evidence that the government plans to introduce through its witnesses and exhibits. Finally, the government is aware that Sgt. Thau deployed less-than-lethal devices when attempting to repel the rioters attacking the Capitol. Defendant should not be allowed to call Sgt. Thau to question or potentially harass him for conduct that is immaterial in this case. Doing so would confuse the jury and distract them from the facts in this case.

**IX.    Deputy Chief Thomas Loyd (USCP)**

Deputy Chief Thomas Loyd is a member of the U.S. Capitol Police (USCP). He has testified in several January 6 trials to provide an account of what transpired at the Capitol on January 6. The government intends to call USCP Inspector Carneysha Mendoza to describe the riot. Deputy Chief Loyd's testimony would needlessly duplicate her testimony and waste the jury's time. The government is unaware of any interaction between defendant and Deputy Chief Loyd, and there is no indication that his observations would shed light on defendant's conduct or state of mind. Deputy Chief Loyd's testimony should therefore be precluded.

**X.     Officer James Stone (USCP)**

James Stone is a member of the U.S. Capitol Police. Again, the government intends to call other members of the USCP to testify. Ofc. Stone's testimony would needlessly duplicate their testimony and waste the jury's time. Moreover, the government is unaware of any interaction between defendant and Ofc. Stone, and there and there is no indication that his observations would shed light on defendant's conduct or state of mind. Ofc. Stone's testimony should therefore be precluded.

**XI.    Matthew Tarducci (FBI)**

Matthew Tarducci is a Special Agent with the Federal Bureau of Investigation (FBI) who was previously assigned to Massaquoi's case. The government intends to call Special Agent Brianha Winter, the person currently assigned to defendant's case. SA Tarducci's testimony would needlessly duplicate SA Winter's testimony and waste the jury's time, and the defense can pose their questions during cross-examination of SA Winter. SA Tarducci's testimony should therefore be precluded. To the extent that the defense believes SA Tarducci has firsthand knowledge of the case that SA Winter would be unable to discuss in her testimony, the

government requests a proffer of that information.

## XII.   Charles Zeigler (FBI)

Charles Zeigler is a Supervisory Special Agent with the FBI. Again, any questions about the FBI's investigation can be raised during cross-examination of SA Winter. Calling SSA Zeigler would needlessly duplicate SA Winter's testimony and waste the jury's time. His testimony should therefore be precluded.

## **CONCLUSION**

For the reasons described above, the United States respectfully requests that this Court grant the government's pre-trial objections to defendant's witnesses.

        Bridget M. Fitzpatrick
        Acting United States Attorney
        D.C. Bar No. 474946

By: */s/ Carlos A. Valdivia*
        Carlos A. Valdivia
        Assistant United States Attorney
        D.C. Bar No. 1019242
        U.S. Attorney's Office for the
        District of Columbia
        601 D Street, NW
        Washington, D.C. 20530
        Phone: (202) 252-7508
        Email: Carlos.Valdivia@usdoj.gov

        */s/ Jake E. Struebing*
        Jake E. Struebing
        Assistant United States Attorney
        D.C. Bar No. 1673297
        U.S. Attorney's Office for the
        District of Columbia
        601 D Street, NW
        Washington, D.C. 20530
        Phone: (202) 252-6931
        Email:  Jake.Struebing@usdoj.gov